(Decided 21st January, 1870.)

ELIZABETH THOMAS *vs.* THE FARMERS' BANK OF
MARYLAND, CATHARINE GARNER, and others.

*Voluntary Partition among Co-parceners — Sale —*
*Vendor's Lien — Owelty of Partition.*

Certain real estate descended to four children from their mother, was by
agreement partitioned and allotted to and among three of them only,
the fourth, in consideration of a certain sum in gross, to be paid to her
by each of the other heirs, agreeing to surrender to them all her interest
in the several parts of the real estate allotted to them respectively. At
the time of making the division and allotment, all the heirs entered into
mutual covenants of ratification, whereby they declared themselves sat-
isfied and content with the division and allotment made, and agreed to
abide by and carry the same into full effect. At the same time, one of
the heirs taking the real estate, executed to his sister his penal bond,
without surety, for the payment of the sum agreed on, with interest, in
consideration of the surrender of her fourth part of the real estate. This
money was not paid, and there was no conveyance from the sister to the
brother of her interest in the part of the real estate allotted to him. He
subsequently became insolvent, being indebted to various persons besides
his sister; to some by judgment, and to one by mortgage of the real
estate allotted to him; this estate having been sold by the trustees in
insolvency, and the proceeds of sale being in Court for distribution
among creditors, the sister exhibited her claim, and insisted that it
constituted a lien not only on the one-fourth interest surrendered to
her brother, but on the whole of that part of the real estate allotted to
him by the award of partition; and that such lien had priority and
preference of the mortgage and judgment creditors of the insolvent.
HELD:

That the surrender of the entire interest of the sister in the estate, descended to her and others, for a stipulated price in gross, constituted a sale and nothing more; and she was entitled to a vendor's lien, restricted however, to the one-fourth part of the estate allotted to her brother in the partition.

The claim of a parcener who takes no part of the estate descended, but surrenders all her interest therein to her co-parceners for a stipulated price, to be paid her, not as a rent issuing out of the estate, but a sum in gross to be secured by bond or otherwise, bears no resemblance to a charge for owelty of partition.

APPEAL from the Circuit Court for St. Mary's County.

The cause was argued before BARTOL, C. J., STEWART, ALVEY and ROBINSON, J.

*Frederick Stone* and *Wm. M. Merrick*, for the appellant.

There was error in the ruling of the Court, in that as partition between parceners was always at common law, and is still, by statute, compulsory, and as the same incidents of warranty and voucher and lien attached at common law to a partition between parceners, whether voluntarily made or compulsory, for the reason that the right to *compel* partition existed; so the same right of lien for owelty of partition, which attaches under our Acts of Assembly, upon compulsory partition, extends to a voluntary partition, and the lien is not brought down to a common vendor's lien by force of the voluntary partition, but is maintained at the level of the statutory lien, to wit, as a lien upon the whole land assigned to the co-parcener, for the like reason that a statutory distribution, having the incident of a lien over the entirety, was compellable, and the law will not take away or narrow a right because a party does not wait to be forced by legal process to conform to its requirements. *Allnatt on Partition,* (5 *Law Lib.*;) 156, 157, 161; 1 *Preston's Abst. Tit.,* 353; 2 *Preston's Abst. Tit.,* 95; 1 *Greenleaf's Cruise,* 389; 2 *Blackstone's Com.,* 324; *Coke's Litt.,* 169, (*a*;) *Jarrett vs. Cooley,* 6 *H. & J.,* 258–260.

James R. Thomas, having no legal title from Elizabeth Thomas for one undivided fourth of the lands sold by the trustee in this case, and having placed on record a deed for two other undivided fourths, to wit, from Henry W. Thomas and James Waring and wife, which deed recites, in explicit terms, the nature and character of said partition, and of the covenants under which he held the land, to secure therefrom to said Elizabeth the whole of her stipulated purchase money; and the said deed of allotment and confirmation being placed on the public records in juxtaposition with his said title deed from Henry Thomas and James Waring and wife, the said recitals operate as constructive notice, to all the world, of the said contract and covenant for a lien. *Bryan's Lessee vs. Harvey*, 18 *Md.*, 128; *Greenleaf on Evidence, sec.* 23; *Alexander vs. Ghiselin*, 5 *Gill*, 138; *Hardy & Talburtt vs. Summers and Wife*, 10 *G. & J.*, 322.

By the true construction of the allotment, and the covenants of the parties thereto annexed, and making part thereof, there was a covenant by James R. Thomas to give a specific lien to Elizabeth by mortgage, and any and every efficacious assurance, upon the whole of the land taken by him, for the full sum of $6,244, which it is the duty of the Court now to enforce; and notice thereof being spread upon the land records, no *laches* can be imputed to her to impair her rights to its specific enforcement against all subsequent purchasers and creditors. *Moale vs. Buchanan*, 11 *G. & J.*, 314; *Repp vs. Repp*, 12 *G. & J.*, 341; *Ridgely vs. Iglehart*, 6 *G. & J.*, 49.

As one of four parceners, the only estate the law gave James R. Thomas was an undivided and unlocated one-fourth interest in the lands of his ancestors, with unity of interest, title and possession with three other parceners. 2 *Blackstone*, 188. The estate which he acquired to the land sold in this case, by his own act and agreement, was an estate in severalty, with no unity of interest, title or possession, with any one, and is, therefore, a different estate from that taken by descent, and consequently held by purchase. 2 *Blackstone*, 241. If he

held this estate by purchase, then the question arises, how far the lien of the appellant extends? In *Iglehart vs. Armiger*, 1 *Bland*, 527, the Chancellor says: "The lien is given to the vendor, not because of the *quantity of interest*, or the nature of the estate sold, but because it would be unjust that the purchaser should hold that, *absolutely*, for which he has not paid." The appellant was entitled to the possession of the whole land "*per my et per tout*," and she sold that right, as well as her other rights, as his co-parcener, to James R. Thomas; he ought not to keep it until fully paid for. 2 *Story's Equity*, sec. 1219; *Ringgold vs. Bryan*, 3 *Md. Ch. Dec.*, 488.

By the sale to James R. Thomas, made by his three co-parceners, the estate in co-parcenary was ended, and no vestige of an undivided interest remained. There remained no undivided fourth part for the lien to attach to. There was only an estate in severalty, and the lien must attach to that, or not at all. Where two vendors sell an estate in common, the *whole estate* is liable for the claim of each vendor. *Moreton vs. Harrison*, 1 *Bland*, 491.

If there be error as to the lien, the case is plain in another aspect. The agreement entered into between James R. Thomas and Elizabeth Thomas, has in it every element that this Court has, in many cases, declared would entitle a party to specific performance. It is "fair, just, reasonable, *bona fide*, certain in all its points, and mutual," and whoever comes into a Court of Equity with an agreement containing all these ingredients, is, by the authority of at least twenty cases in this Court, entitled to have a specific performance of such an agreement. *Smith vs. Crandall*, 20 *Md.*, 482.

By that agreement, each person who signed it agreed to give all such assurances, deeds or other instruments which might, at any time thereafter, become necessary to carry out that agreement. By it James R. Thomas became bound upon the demand of the appellant, to execute any instrument she might require, to secure her $6,244. She became bound, upon

the payment of that sum, to convey to him all her interest in said land. She had, by the agreement itself, a vendor's lien, better than any mortgage, certainly, on the fourth part. Unless the Court decreed more security than the fourth part, it would give her nothing more than she had already. The words in the agreement to make and give all conveyances or other instruments necessary to secure her $6,244, would be useless. He certainly, upon the fair construction of that agreement, bound himself, at any time thereafter, to give her greater *security* than the agreement itself. The only other security the Court could have compelled him to give, would have been a mortgage of the whole land. If the Court would have compelled him then, they would compel him now.

*John P. Poe* and *Peter W. Crain*, for the appellees.

In the bill filed by the appellant in April, 1866, she alleged that, in April, 1854, she agreed to sell to her brothers and sister *her interest* in the real estate of their parents, *retaining*, however, her lien for the purchase money. The claim, therefore, thus set up by *herself*, is neither more nor less than an ordinary vendor's lien. She had sold her one undivided fourth in the land to her brother—had never parted with the legal title to that fourth, and had never been paid the purchase money. To an ordinary vendor's lien on that fourth, she is entitled, and to no larger or more comprehensive equity. The agreement of April, 1854, provides that she was " to have secured to her by each" of her co-heirs the sum of $6,244. How the debt was to be secured is nowhere stated; but the conduct of the parties demonstrates that the retention of the legal title by the appellant, and the delivery of the bond for the sum designated was the utmost which any of them contemplated. At all events, there is no intimation anywhere in the record of any understanding, agreement, or purpose to give to her anything like a mortgage upon the *whole* interest in the land acquired by her co-parceners, respectively, by virtue of the division made by their common friends.

But if in the face of her own interpretation of the agreement, as evidenced by her acceptance of the bond, retention of the legal title and allegations in her bill, the security which she was to have, can, by the ingenuity of counsel, be expanded into an implied understanding to give her something more than a mere vendor's lien, such security, it is now well settled, will not be enforced in her favor against subsequent creditors without notice, such as the appellees. *Nelson vs. Hagerstown Bank*, 27 *Md.*, 51.

In the absence of proof of actual notice of an equity greater than that created by her retention of the legal title, as a means for securing payment of the purchase money due her, James R. Thomas, as to such third parties, must be treated as the owner, in fee, of the real estate allotted to him, encumbered only with the one undivided fourth interest therein of the appellant. So far as the appellees are concerned, there is not a particle of evidence tending to show a suspicion on their part that he was not the absolute owner of the whole, without even this encumbrance.

As to the true measure of the vendor's lien: does it extend to the three-fourths interest in the land which she never owned, and therefore never sold, or is it restricted to the one-fourth, of which only she was, in fact, the vendor? Is she a creditor secured by a vendor's lien as to that one-fourth, and a general unsecured creditor as to the other three-fourths, or is she a secured creditor as to the whole?

Ascertain once the quantity of estate actually sold, and you fix at the same moment, and by the same inquiry, the exact beginning and end of the vendor's lien. The appellant was seized and possessed, as tenant in common with the insolvent, of one undivided fourth in the land allotted to him—neither more nor less—not a fourth in any distinct portion of the whole, but an undivided fourth in each and every acre of the whole tract. Of the remaining three similar undivided fourth parts, he owned one in his own right and two by purchase from his brother Henry and his sister Ann. Upon these three

his sister, the appellant, never had the slightest claim or lien; she never owned, never sold or pretended to sell them to him, and, as an inevitable result, cannot be entitled to a lien upon them as vendor.

Thus situated, no injustice is done her by giving her the net proceeds of the one undivided fourth of the whole, to which alone her vendor's lien extended.

The provisions of the Act to direct descents, reproduced in the Code, Article 47, sec. 51, making the bonds given by the heir electing to take the whole estate " a lien on the lands, for the purchase of which they were given," have no application to a case where the division of the lands was made by the parties themselves, without the slightest reference to that Act. The bond in question, therefore, is not, by that Act, made a lien upon the whole estate. The two proceedings are totally different—the one depending upon the will and act of the parties, and the other deriving its validity exclusively from the positive provisions of the statute.

ALVEY, J., delivered the opinion of the Court.

The real estate descended from Mrs. Eliza Thomas, the widow and sole devisee of the late Governor James Thomas, to her four children, was, by agreement and through the agency of mutual friends, on the 29th of April, 1854, partitioned and allotted to and among three of them only, the appellant being the fourth, and who, in consideration of a certain sum in gross, to be paid to her by each of the other heirs, agreed to surrender to them all her interest in the several parts of the real estate allotted to them respectively.

At the time of making the division and allotment, all the heirs, including the appellant, entered into mutual covenants of ratification, whereby they declared themselves to be satisfied and content with the division and allotment made, and thereby covenanted and agreed, each with the other, to " stand to, abide by, and carry into full effect the said award, division and allotment, and to make and give, each to the other, and

all to each, any and all assurances, conveyances, deeds, or other instruments, which, may at any time hereafter, become necessary to the fulfilment of said award, division and allotment, according to the true intent and meaning thereof; Elizabeth Thomas (the appellant) to have secured to her by each of the other parties hereto, in consideration of the surrender, by her hereby made, of all her interest in said estate to them, in manner as specified in the aforesaid division, the sum of six thousand two hundred and forty-four dollars."

At the same time, James R. Thomas, one of the heirs taking the real estate, executed to his sister, the appellant, his penal bond, without surety, conditioned for the payment of the sum of $6,244, with interest, "in consideration of the aforesaid surrender of her fourth part of the property aforesaid." This money, thus secured by the bond, has not been paid, and the appellant has never made a deed of conveyance to her brother for the fourth interest in the part of the real estate alloted to him, though the other heirs have conveyed to him, in pursuance of the partition. And since these transactions, James R. Thomas has become insolvent, being indebted to various persons besides the appellant—to some by judgment, and to one by mortgage of the real estate assigned him by partition—and all of such real estate, so assigned and allotted to him, having been sold by insolvent trustees, the proceeds of sale are in Court for distribution among creditors, among whom is the appellant, who exhibits her claim, evidenced by the covenant and bond before referred to, and insists that it constitutes a lien, not only on the one-fourth interest surrendered, to her brother, but on the whole of that part of the real estate allotted to him by the award of partition; and that such lien has priority and preference of the mortgage and judgment creditors of the insolvent.

The lien, to the extent claimed, was disallowed by the Court below, but was recognized as, and restricted to, a vendor's lien binding on the one-fourth part of the real estate allotted to James R. Thomas in the partition of the land descended; and

as the proceeds of the entire estate thus acquired by him are greatly insufficient to pay the appellant and the other lien creditors to whom she has been deferred, she has appealed to this Court for a review of that decision.

A lien on the entire third part of the estate descended, and which was allotted to James R. Thomas, is attempted to be maintained on the theory that the appellant's claim is for owelty of partition, and therefore a charge. But it is manifest that neither at the common law, nor under the statute providing for the partition of estates among parceners, can this claim be regarded as for owelty of partition, so as to constitute a charge to the extent claimed.

In making voluntary partition among parceners at the common law, if messuages are the one of less value than the other, they may make partition between them, that one shall have the one messuage and the other the other, and the one who gets the messuage of the greater value, shall grant a rent out of it to the other and her heirs for owelty of partition. *Littleton, sec.* 251. And such rent is a rent charge, and may be distrained for of common right, into whosesoever hands the messuage out of which such rent is granted shall come. *Littleton, secs.* 252, 253. And such rent partakes of the nature of the land, and has its descendible quality, for as said by LORD COKE, in his commentary on the sections of *Littleton,* just referred to, (*Co. Litt.,* 169, *b.,*) "the rent is in nature of co-parcenary, and after the death of the one grantee the moiety of the rent shall descend to her issue in course of co-parcenary, and not survive to the other, for that the rent doth come in recompense of the land, and therefore shall ensue the nature thereof." Such being the nature and quality of the charge of owelty of partition at the common law, what is there in this case to resemble it, or bear the remotest analogy to it? Here the appellant, though one of the parceners, takes no part of the estate descended, but surrenders all her interest therein to her co-parceners for a stipulated price to be paid her, not as a rent issuing out of

the estate, but as a sum in gross to be secured by bond or otherwise. She has no remedy by distress, such as is given by the common law to a parcener holding a charge for owelty of partition, but she is required to resort to the ordinary remedies for the collection of her debt. The debt agreed to be paid in consideration of the surrender of her interest in land, would not devolve on her heirs-at-law, but would go to her personal representatives, and form part of her personal estate. And if such be the character of the claim, was the consideration of it anything more than an ordinary sale of the appellant's interest in the estate descended?

In *Hulbert vs. Hart*, 1 *Vern.*, 133, there had been a voluntary partition among co-parceners, and the lands of one being of greater value than those allotted to another, until an estate for life fell in, it was agreed, that the co-parcener taking the least share, should have a certain annual rent, out of the land allotted to the other, to make his share equal; and a bond was given for securing the payment of the annual sum agreed on, which, by the terms of the bond, was made payable to the co-parcener, his executors or administrators; and after the death of the party to whom the bond was given, the question was, whether the heir or the executor was entitled to the benefit of it; and it was decreed in favor of the executor. There it was admitted that, if the party taking the least part had taken *a sum in gross* in consideration of the inequality of partition, that would have been like selling so much of his part of the estate; and the LORD KEEPER decreed upon the ground that there was no grant of rent, but a bare agreement.

If, in that case, as was conceded, the taking a sum in gross, in consideration of the inequality of partition, would have been a sale of so much of the estate descended as was required to make equality, it is clear that, in this case, the surrender of the entire interest of the appellant in the estate descended to her and others, for a stipulated price in gross, constitutes a sale, and nothing more.

Nor do we think that the case can be at all controlled by the provision in the statute to direct descents, (*Act* 1820, *ch.* 191, *sec.* 20 ; 1 *Code, Art.* 47, *sec.* 51,) whereby, upon an election to take at a valuation being made, and bonds given to other parties entitled, for their proportions of such valuation, it is declared that " such bonds shall be and remain a lien on the lands, *for the purchase of which they were given,* until the said bonds shall be wholly paid." For, whether the lien thus given could be more extensive, and operate upon other interests in the land than that purchased of the party to whom the bond is given, is immaterial, as such lien is of statutory creation, and has reference exclusively to the legal proceedings in which the election is made, the right of which exists and can be exercised without the least respect to the consent of others interested in the estate.

Looking, then, at the nature and character of the contract between the appellant and her brother, in reference to the partition and allotment of the estate descended, the most favorable position in which we can place the appellant is that of vendor, with a lien on the interest surrendered for the unpaid purchase money. To this extent, and no further, do we think the lien should operate. To be a vendor's lien, it could not have a more extensive operation than upon the interest sold. The reason and nature of the lien thus restricted it. .

But, it is said that, as parceners have unities of interest, title and possession, the interest of the appellant extended to all and every part of the land descended, and, consequently, to all of the land allotted to James R. Thomas under the award of partition, and that, therefore, her lien, even as a vendor's lien, was coëxtensive with and bound all the land held by her brother.

To the full extent of this proposition we do not accede. For, however correct it may be in one sense, it is manifestly not so in all.

It is true that co-parceners, though several persons, constitute but one heir in contemplation of law; and, as said by

LORD, COKE, (*Co. Litt.*, 164, *a*,) they have "one entire free-hold in the land, as long ¡as it remains undivided, in respect of any stranger's *præcipe.* But, between themselves, to many purposes, they have, in judgment of law, several freeholds; for, the one of them may enfeoffe another of them of her part, and make liverie." And so in this case, as to the partition and surrender of the appellant's interest in the estate to her co-parceners, she had in law a several freehold and a distinct interest, and it was with reference to such distinct interest that the price was agreed to be paid.

· This case is not unlike that of *Spalding vs. Brent,* 3 *Md. Ch. Dec.,* 411. There, arbitrators were selected by the children and heirs-at-law of George H. Spalding to ascertain their respective proportions of the real and personal estate of their father, then remaining in the hands of George R. Spalding, one of the children and co-heirs. The arbitrators made their award, valuing the estate at a certain amount, and apportioned it among those entitled. It was further awarded that, upon the payment, by George R. Spalding, of the shares of his co-heirs thus ascertained, they should each convey to him their title to the real estate of their father, and release their interest in the personal estate. George R. Spalding executed to his brother, Basil D. Spalding, his single bill for the portion awarded to the latter; and, after the death of George R. Spalding, on his real and personal estate being sold for the purpose of paying his debts, the claim of Basil D. Spalding was brought into controversy, and, upon its being established as a subsisting claim, it was determined by the Chancellor that he was, *to the extent of his share of the real estate,* an unpaid vendor, and had a right, in equity, to pursue the estate or its proceeds as against the vendee, or volunteers claiming under him, or his judgment and general creditors; but as to the residue of the claim remaining unpaid after applying the proceeds of such share, it would have to share the fate of the general creditors. It was not pretended, in that case, that the lien operated upon any other portion of the estate than the

particular share of Basil D. Spalding, although the estate descended in co-parcenary, and the legal estate of Basil therein had never been conveyed to his brother.

That decision was made by an able and experienced Chancellor, and it appears to have been acquiesced in by all concerned, as there was no appeal taken; and we can perceive no ground upon which it could have been successfully assailed.

But it is contended that the appellant is entitled to priority of payment of her whole claim, upon the ground that she has a right to specific performance of the contract with her brother for the better security of her debt.

To say nothing of the lapse of time, we can perceive nothing in this case to afford the foundation for such relief. That clause in the articles of ratification in regard to all further assurances, conveyances, deeds, or other instruments that might be necessary to the fulfilment of the award, division and allotment of the estate, has reference exclusively to the title and holding of the land according to the allotment; and it is by the clause that follows that provision is made for the appellant, in consideration of her surrender to the other co-parceners all her interest in the estate that had been partitioned. This last clause declares that the appellant shall have secured to her, by each of the other parties, the sum of $6,244. But how to be secured is not declared, and it would appear that that was a matter of subsequent agreement. If a mortgage had been designed, covering all the land allotted to James R. Thomas, it should have been so expressed, and be made to appear why it was not executed. There is, however, nothing in the record to indicate that any other security was ever contemplated than the vendor's lien and the personal obligation created by the bond; that, in the acceptance of the bond, the appellant regarded the covenant to secure as gratified; and, certainly, such acceptance goes far to negative the idea that any other security was ever intended. Be that, however, as it may, it is clear that the mortgage and judgment creditors could not be affected by a simple notice (admitting

that they had such) of the debtor's obligation to secure a certain sum of money, without designation of the means by which it was to be done, or the property to be charged. Of all the cases upon the subject, we apprehend none can be found to support such a proposition; and it is not the policy of either the Courts or the Legislature, at this day, to extend the doctrine of equitable mortgage, when to the prejudice of *bona fide* creditors.

Approving, as we do, of the order appealed from, it will be affirmed.

*Order affirmed.*

(Decided 26th January, 1870.)

STEWART, J., delivered the following concurring opinion:

The merits of this case lie within narrow limits. It is an appeal from an order of the Court below in a proceeding in insolvency, and must be decided according to the principles of equity, (*Code, Art.* 48, *sec.* 10,) which clearly forbid the allowance of any lien on the land in question, or the proceeds thereof, under the circumstances, exceeding the one fourth part thereof surrendered and sold by the appellant to her brother, James R. Thomas, by virtue of the agreement of the 29th April, 1854.

The counsel for the appellant referred us to the doctrine and practice of the common law, relating to estates held in co-parcenary, converted into severalty by partition, with the right incident to *owelty* of partition, and also to analogies attempted to be deduced from our statute (*Art.* 47, *sec.* 51 *of the Code*) upon the subject of the partition of estates, making the bonds of the persons electing to take the estate, or any part thereof, a lien on the lands, for the purchase of which they were given.

Such considerations, whilst they furnish no rule controlling the question here involved, to be determined by the principles of equity, certainly give no countenance to the demand of the appellant.

Assuming that the bond given by her brother for the payment of the $6,244, with the retention of her legal title, was not the full performance of the stipulation of the agreement between them, to secure to her the payment of the said sum, and as such, accepted by her, (which involves a proposition by no means free from difficulty,) the agreement of the 29th April, 1854, in regard to the division of the lands in question, and providing for the payment in money, by each of the parceners, for the several part alloted to each of them, on account of the interest belonging to the appellant, if it did entitle her to a specific performance, *inter partes,* would not justify a Court of Equity in granting such relief, to the prejudice of the more meritorious claims of the creditors of her brother. The rights of creditors cannot be impaired by any equitable claim not amounting to a specific lien, which she may have held against her brother, or the lands surrendered to him, unless, in some reasonable form, they had notice of it and could guard against its operation. *Nelson vs. Hagerstown Bank,* 27 *Md.,* 51.

No such notice appears to have been given, but the appellant, on the contrary, relying upon the bond of her brother for the payment of the sum due to her, and the retention of her legal title, slept upon her rights, until the claims of her brother's creditors, strangers to the equities existing *inter sese* under the agreement, had supervened, and hence this collision of claim between her and the creditors of her brother.

Courts of justice will not encourage *laches* and give to parties, negligent in securing their rights, the benefit of equities *inter partes,* to the injury of others deluded by their omissions. Would it be just, after the lapse of time, and the neglect of the appellant, to permit the enforcement of her claim, as a specific lien, on the proceeds of the property here involved, over the manifest equities of the creditors of her brother, and to postpone them in her favor? Under the circumstances, the appellant has not shown any equitable claim to a specific performance of the agreement, to the prejudice of the demands of the appellees.

Her lien as the vendor of her interest in the lands allotted to her brother, whatever it may amount to, according to the principles of equity, depends upon the extent of that interest, and grows out of the surrender or sale thereof, under the contract between the parties of the 29th of April, 1854, because the lien for the purchase money can only result from the sale of her interest in the lands allotted to her brother. By this agreement, she, in substance and effect, contracted to surrender to her brother James her undivided fourth part of the lands allotted to him, to be held in severalty under the partition of the whole estate, agreed to by the respective parties, being the parceners thereto entitled, and to look to him, and his allotted share in the lands, for the sum stipulated to be paid to her by him.

Under this division, her right as one of the parceners in the entirety, must be treated in equity, undertaking to ascertain the character of her lien, and to leave the same to her as reduced to an undivided fourth part in the three several allotments, which, by the operation of the contract between the parties, was to be held as the several estate of each, and as such liable to her incidental equity as the vendor. Certainly this is the only just construction to be given to the agreement, by a Court of Equity, whilst protecting and upholding her lien as the vendor for the purchase money, to the extent of her interest. There can be no question that her lien, as vendor for the purchase money of her undivided interest, is an equitable incident from the sale thereof, commensurate with the right surrendered on the one side, and acquired by the other. This is the result of the relation of vendor and vendee, and the right of the vendee is qualified accordingly, and he and those claiming under him, have no perfect title to the property purchased, or the proceeds thereof, until the purchase money is paid.

The appellant could have sold to her brother, or other party, her undivided interest in the whole estate, before any partition had been agreed upon, and her lien as vendor under

such circumstances, would only have reached to that extent. The other parceners might also have sold their undivided interest, without partition and their several and respective liens, as vendors, would have been but co-extensive with said interest.

After the partition, when the other three parceners became each entitled to the allotment in severalty by the operation of the contract of partition, her right as vendor attached upon each several estate in pursuance of the terms of the surrender and sale. Whilst the appellant was entitled to her lien on the part assigned to her brother James, she also held a like lien for the one-fourth part of the other two allotments.

In place of holding the lien, in its entirety, on the whole estate, the lien was parcelled out by the agreement and made to consist of three several liens, each one applicable to each of the several allotments. This adjustment did not, at all, diminish the amount of the lien on the whole, but vested an equal portion thereof in every part into which the estate had been severed.

Aggregating the several liens, if the appellant has the full benefit of her entire lien, upon what principle of equity can she be allowed more? Would not a Court of Chancery, in giving her relief as vendor, be measuring out to her more than her lien as vendor, by the allowance of any further demand? By the contract, each one of the others was bound to secure to her the specified amount.

Would it be right, in the face of the agreement so providing, to make them and their lands answerable as co-sureties for the performance of the stipulation of each, in utter defiance of the express terms of the contract? Such would be the effect, if the lands of the others, were to be encumbered with the obligations of each. According to the principles of equity, her lien as vendor cannot be construed, from the terms of the division and allotment of the lands and the nature of the division, entitling each parcener to hold his portion in severalty, or by any interpretation of the contract, between

the parties stipulating for the payment of the given sum by each, or upon any principle of co-parcenary, each parcener holding *per my et per tout*, to amount to more than the undivided fourth part in the lands, assigned and surrendered to her brother James.

Any different theory as to the character and extent of her lien as vendor, would necessarily result in a conflict with the just and equal lien of the other parceners, in case they had surrendered their undivided interest without an equivalent, and would not be in accordance with the agreement of the parties. The allowance to her, the lien for the purchase money arising from the sale of her undivided fourth interest, concedes the same right to her co-parceners, recognizes the validity of the contract of division, gives to the appellant the benefit of her just lien in the proceeds of the property of her brother and rejects the meritorious claims of the other parties concerned.

I fully concur in the opinion of the Court, that the order below must be affirmed.